**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Kimberlee Gray,

      Plaintiff,

    v.                              Case No. 1:03cv119

City of Cincinnati, *et al.*,             Judge Michael R. Barrett

      Defendants.


**<u>OPINION AND ORDER</u>**

This matter is before the Court upon Defendants Glenda Smith-Johnston, Mark Gissiner, Kent Ryan, and Fay Dupuis' Motion for Partial Summary Judgment (Doc. 15). These Defendants, joined by the Defendants City of Cincinnati and John Shirey, have also filed a Motion for Summary Judgment.  (Doc. 24)  Plaintiff Kimberlee Gray has filed a Response in Opposition to both Motions (Docs. 20, 45), and Defendants have filed Replies.  (Docs. 23, 54)  This matter is now ripe for review.

A.    <u>FACTS</u>

Plaintiff Kimberlee Gray began her employment with the Defendant City of Cincinnati ("the City") as an Investigator in the Office of Municipal Investigation ("OMI") in March 1998.  (Doc. 21, Gray Depo. at 17-18)  OMI was created to conduct independent investigations into allegations of serious misconduct by City employees.  (Doc, 20, Ex. 1) As an Investigator, Gray's responsibilities included investigating allegations of serious misconduct involving City employees; investigating operations of entities funded by the City or under contract with the City; presenting findings and recommending corrective actions;

and providing responsible staff assistance to the OMI Manager.  (Doc. 20, Ex. 2)

In April of 2000, OMI Manager Ernest McAdams resigned from his position.  (Gray Depo. at 18)  Defendant John Shirey, the City Manager, appointed Gray as Acting Manager of OMI.  (Id.)  The OMI Manager reported directly to Shirey.  (Gray Depo. at 21)

In her capacity as Acting Manager, Gray sent a memorandum to Defendant Kent Ryan, the Safety Director for Cincinnati's Police and Fire Divisions, which included a list of police officers who OMI had recommended be disciplined.   (Doc. 20, Ex. 5)  Gray sought information regarding the disciplinary action taken against these officers.  (Id.)  Upon receipt of the memorandum, Ryan telephoned Gray, voicing his belief that the request fell outside the authority of OMI.  (Doc. 21, Ryan Depo. at 29-29; Doc. 20, Ex. 6)  Gray states that Ryan acted in a belligerent and intimidating manner.  (Gray Aff. ¶ 1)  Ryan states that he was concerned that the information would be discoverable in litigation. (Ryan Depo. at 36)

Also during Gray's tenure as Acting Manager, the Cincinnati City Council directed OMI to investigate the authorization of certain payments made in connection with the "Genesis" redevelopment project.  (Doc. 20, Ex. 4)  Gray was actively involved with the Genesis investigation.  (Gray Aff. ¶2)  As a part of the investigation, Gray attempted to question Charles Bronson, a former Genesis supervisor.  (Doc. 20, Ex. 8) Bronson refused to voluntarily talk with Gray and Frank Sefton, another OMI investigator, unless he was subpoenaed by City Council.  (Gray Depo. at 104; Doc. 20, Ex. 8)  On May 10, 2001, Gray informed Shirey that she would ask the City Council to issue a subpoena for Bronson. (Doc. 20, Ex. 9)

Shirey then instructed Defendant Faye Dupuis, then City Solicitor, to contact

Bronson to convince Bronson to cooperate with the Genesis investigation without a subpoena.  (Dupuis Depo. at 14)  Dupuis contacted Gray and requested that she provide Bronson's telephone number.  (Gray Depo. at 122-23)  Gray refused to provide Dupuis with Bronson's telephone number because she believed that Dupuis was attempting in interfere with the Genesis investigation.  (Id. at 121-22)  In response to Shirey's and Dupuis' conduct, Gray appeared before the City Council on May 16, 2001 to report their alleged interference, and ask that she report to Council, not Shirey, on the Genesis investigation. (Doc. 20, Ex. 10)  Council approved her request.  (Id., Ex. 16)

Gray had applied for the position as the permanent OMI Manager.  (Gray Depo. at 74) The position of OMI Manager required education which "should be equivalent to a Master's degree" or a Juris Doctorate.  (Doc. 24, Ex. 1)  Shirey determined that Gray did not meet this requirement.  (Doc. 46, Shirey Depo. at 54-55)  Gray alleges that Shirey told her that the position was reserved for African-Americans.  (Gray Depo. at 146)

On June 18, 2001, Shirey announced that he hired Defendant Glenda Smith-Johnston as permanent Manager of OMI.  (Doc. 45, Ex. 7)[1]  Smith-Johnston is African-American.  (Doc. 64, ¶ 50)  Gray was returned to her position as an OMI Investigator. (Gray Depo. at 29-30)  Gray's salary was reduced to that of an Investigator.  (Id. at 157) However, Gray's salary did not include a merit increase that she would have received in the interim as an Investigator.  (Doc. 45, Ex. 15)  This matter was not resolved for almost

_____

[1]Defendants point out that the offer of employment to Smith-Johnston was made on May 2, 2001, which is two weeks before Gray appeared before City Council.  (Doc. 21, Ex. 6)  However, Gray calls to the Court's attention that Smith-Johnston was called in for another interview around the middle of May because a background check revealed that Johnston had been arrested for drunk driving.  (Johnson Depo. at 46-47, 72)  Moreover, Defendant Gissiner stated that he was interviewed for the position one or two days before the announcement was made that Smith-Johnston had been appointed.  (Gissiner Depo. at 92)

six months.  (Doc. 45, Ex. 16)

Gray also alleges that Shirey failed to create the position of "Chief Investigator." (Gray Aff. ¶ 5)  Gray alleges that Shirey planned to promote her into this position if she was not hired as permanent OMI Manager.  (Gray Depo. at 163-64)

According to Smith-Johnston, Gray indicated that her transition back to Investigator was difficult.  (Doc. 20, Ex. 14)  Smith-Johnston suggested that Gray seek psychological assistance and told her that she was not a team player.  (Doc. 20, Ex. 13)  Smith-Johnston also told Gray that if she was "unhappy and uncomfortable working in the OMI, as [she] expressed on July 13, 2001, it would be in [her] best interest to find other employment." (Doc. 20, Ex. 14)  Gray alleges that Smith-Johnston was attempting to embarrass or humiliate her by suggesting that she seek psychological assistance.  (Gray Depo. at 172-73)

In response to the controversy surrounding the Bronson subpoena, Smith-Johnston issued a directive forbidding OMI investigators from communicating with City Council members about their investigations.  (Smith-Johnston Depo. at 231-32)  Gray argues that Smith-Johnston effectively removed her from the Genesis investigation.  (See Doc. 20, Ex. 15)  Smith-Johnston disputes that she removed Gray from the investigation.  (Doc. 20, Ex. 20)

On September 10, 2001, Smith-Johnston, Gray, and Sefton appeared before City Council to explain why Gray's role in the investigation had changed.  (Gray Aff. ¶ 7; Doc. 45, Ex. 17)  Council's motion requesting Gray's presence recounts the history of Gray's previous appearance before Council, and Council's efforts to learn the status of the Genesis investigation and Gray's role in the investigation.  (Doc. 20, Ex. 10)  The motion

states further that:

> It is critical that Council and the public learn whether this investigation has been further compromised.  One of the issues being examined is whether Mr. Shirey was aware of approved payments to board members of Genesis/WECC and their relatives.  The fact that his appointee, Ms. Smith-Johnston, so far refuses to let Ms. Gray answer questions gives the impression that facts are being covered up.

(Id.)  There was a certain amount of press coverage regarding Gray's appearance before City Council.  (Doc. 45, Ex. 19)

On September 14, 2001, Smith-Johnston sent Gray a memo stating that as OMI Manager, she was "in charge of all investigations," and that Gray was to report directly to her.  (Doc. 20, Ex. 20)

On September 24, 2001, Gray and Sefton sent materials responsive to City Council's request "to provide any relevant emails, notes or other material documenting the issues regarding the management of the [Genesis] investigation."  (Doc. 45, Ex. 21)  These materials included a taped conversation between Gray and Smith-Johnston, as well as emails and memoranda from Smith-Johnston.  (Id.)

Gray maintains that Smith-Johnston denied her tuition reimbursement, and stated in a staff meeting that such reimbursements were no longer feasible because Gray had spent money on an expert witness during the course of an investigation.  (Gray Depo. at 176-77)  Gray states that Smith-Johnston made this statement to embarrass her, and disputes whether the statement was true.  (Id.)  Defendant Smith-Johnston contends that she denied all tuition reimbursements, and OMI simply did not have enough money to continue the program.  (Smith-Johnston Aff. ¶ 5)

On October 15, 2001, Smith-Johnston sent a memo to Shirey suggesting that

certain conduct of Gray and Sefton must cease, and be the subject of disciplinary action. (Doc. 20, Ex. 21)  Smith-Johnston asked Shirey to "[p]lease advise."  (Id.)  On October 30, 2001, Smith-Johnston then issued an official "Disciplinary Action Notice" against Gray. (Doc. 20, Ex. 23)   The Disciplinary Action Notice states that Gray was insubordinate, dishonest, and failed to exhibit good behavior.  (Id.)

In October of 2001, Smith-Johnston resigned from her position under protest.  (Doc. 20, Ex. 11)  Defendant Mark Gissiner became Acting OMI Manager.  (Gissiner Aff. ¶ 1) Gissiner completed a positive interim performance review for Gray in December of 2001, however, he expressed concern over "previous issues with Council member contacts." (Doc. 20, Ex. 24)  Gray maintains that Gissiner retaliated against her by reassigning some of her cases to different investigators and changing her reports.  (Gray Depo. at 178, 183) Gray also states that Gissiner removed her from an investigation involving Police Lieutenant Colonel Richard Janke.  (Id. at 184)  Gissiner informed Janke not to answer Gray's request for documents.  (Doc. 20, Ex. 26) Gissiner states that he removed Gray from the investigation because he "just did not want that case to go in that direction." (Gissiner Depo. at 218) Gissiner explains that he wanted to protect OMI's relationship with the Police Department.  (Gissiner Aff. ¶ 11)  Gray states that she was humiliated and her reputation with the members of the police department was damaged.  (Gray Aff. ¶ 10)

In January of 2003, Gray transferred to the internal audit department of the Citizens' Complaint Authority, where she remains employed today.  (Gray Depo. at 31-32)

In her Amended Complaint, Gray brings a claim under 42 U.S.C. § 1983 for violations of the First, Fifth, and Fourteenth Amendments.   Gray also claims reverse discrimination and retaliation based on race in violation of Title VII and Ohio Rev. Code

Chapter 4112; violations of the Ohio Public Records Act and Ohio public policy; destruction of public records in violation of Ohio Rev. Code § 149.351; and spoilation of evidence. (Doc. 64)  Defendants Glenda Smith-Johnston, Mark Gissiner, Kent Ryan, and Fay Dupuis (collectively "Individual Defendants") have been named in both their individual and official capacities.

**B.    ANALYSIS**

**1.    Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party has the burden of showing an absence of evidence to support the non-moving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the non-moving party. *Id.* at 252.  However, a court must view the evidence and draw all reasonable inferences in favor of the nonmoving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986).

**2.    Qualified Immunity**

The Individual Defendants argue that they are entitled to qualified immunity from

Gray's constitutional claims.

The doctrine of qualified immunity protects government officials acting in their official capacities from damages if their actions did not "violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), *citing Procunier v. Navarette*, 434 U.S. 555, 565 (1978). Qualified immunity involves a two-step inquiry: (1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and if so, (2) whether that right was clearly established. *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006), *citing Saucier v. Katz*, 533 U.S. 194, 201 (2001). If no genuine issues of material fact exist as to whether the public official committed acts that would violate a clearly established constitutional right, summary judgment may be proper. *See Jackson v. Hoylman*, 933 F.2d 401, 403 (6th Cir. 1991) (finding that summary judgment was inappropriate on the issue of qualified immunity when two accounts of an arrest incident differed in all factual respects).

While the defendant bears the burden of pleading the defense of qualified immunity, the ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity. *Miller v. Administrative Office of Courts*, 448 F.3d 887, 894 (6th Cir. 2006), *citing Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).

### a.    Constitutional Violation

Gray's Amended Complaint alleges retaliation under the First Amendment.[2] In order

---

[2]Gray's Amended Complaint also alleges a violation of due process. While the Individual Defendants' Motion for Partial Summary Judgment recognizes that Gray has made this claim (see Doc. 15, at 5), it is not addressed in the Individual Defendants' arguments. Defendants' Motion for Summary Judgment argues that this claim must necessarily fail with Gray's First Amendment claim. However, Gray has not addressed her due process claim in her Response in Opposition to either of Defendants' Motion.

to make out a *prima facie* case that she was terminated in retaliation for engaging in speech protected by the First Amendment, Gray must show: (1) that she "engaged in constitutionally protected speech"--that is, "that her speech touched on matters of public concern," (2) that she "was subjected to an adverse action or was deprived of some benefit," and (3) that "the protected speech was a substantial or a motivating factor in the adverse action." *Miller*, 448 F.3d at 894, *citing Banks v. Wolfe County Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003) (citations and quotation marks omitted); *see also Connick v. Myers*, 461 U.S. 138, 143 (1983).

Whether the speech at issue involves a matter of public concern is a question of law for the court.  *Farhat v. Jopke*, 370 F.3d 580, 589 (6th Cir. 2004) (citations omitted).[3] Matters of public concern are those that can "be fairly considered as relating to any matter of political, social, or other concern to the community." *Connick*, 461 U.S. at 146.  As the Supreme Court has recently reiterated:  "So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." *Garcetti v. Ceballos*, 126 S.Ct. 1951, 1968 (2006); *see also Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968) (stating that a court must balance the interests of the public employee, "as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.") (the "*Pickering* balancing test").  However, the Court held that "when public employees make

---

The Court must therefore conclude that Gray has abandoned this claim.

[3]In *Farhat*, the court explained that there may be some factual questions for a jury if it is disputed whether the expression occurred or what words were specifically stated.  370 F.3d at 589.  Here, there is no such dispute.

statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."  126 S.Ct. at 1960.

Gray argues that she was retaliated against for speaking about, or in the context of, OMI's public investigation into possible wrongdoings by City officials.    Possible wrongdoings by city officials are clearly matters of public concern.  *See Solomon v. Royal Oak Township*, 842 F.2d 862, 865 (6th Cir. 1988) (holding that speech alleging or disclosing public corruption "is a matter of public interest and therefore deserves constitutional protection."  However, the difficulty in this case is that Gray's official duties, both as Acting Manager and Investigator, was to investigate and report on such possible wrongdoings.   Nevertheless, to the extent that Gray was speaking about City officials interfering with her investigations, the Court finds that this speech was protected. Specifically, the Court finds that the statements made during both of Gray's appearances before City Council, as well as her September 24, 2001 memorandum to City Council, are matters of public concern.  While Gray may have been communicating with Council in her capacity as either Acting Manager or Investigator, she was not performing her official duties.  Instead, Gray appeared, at Council's request, to report on interference with her official duties.  Under the *Pickering* balancing test, the Court finds that there is no evidence in the record that this speech effected to operations of OMI or the City.  Defendants merely cite generally to Gray's "insubordination."  For these reasons, Gray's communications with City Council were protected.

However, the Court finds that Gray's communications with Defendant Ryan are not protected.  Plaintiff sent a memo to Ryan as follow-up to OMI's investigations.  This speech

was made pursuant to her official duties, and therefore Gray was not speaking as a citizen for First Amendment purposes.[4]  Because Gray has not shown a constitutional violation, Ryan is entitled to qualified immunity.  Similarly, Defendant Dupuis is entitled to qualified immunity because Gray spoke to Dupuis about the subpoena for Bronson in the course of Gray's investigation of the Genesis matter. Therefore, Gray was making a statement pursuant to her official duties, and her speech was not protected.[5]

The Court now turns to whether Gray was subjected to an adverse action or deprived of some benefit by Smith-Johnston or Gissiner.

In the context of First Amendment retaliation, an adverse action is one likely to "'chill a person of ordinary firmness from continuing to engage in [protected] activity.'"  *Leary v. Daeschner*, 228 F.3d 729, 737 (6th Cir. 2000), *quoting Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998).  Gray alleges that Smith-Johnston removed her from the Genesis investigation, denied her tuition reimbursement, humiliated her in front of co-workers, and formally disciplined her in retaliation for exercising her freedom of speech.  The Sixth Circuit has recognized that in some cases "injury based on embarrassment, humiliation, and emotional distress" is sufficient to be actionable under section 1983.  *Mattox v. City of Forest Park*, 183 F.3d 515, 521 (6th Cir. 1999), *citing Bloch*, 156 F.3d at 679-80 *and Barrett v. Harrington*, 130 F.3d 246 (6th Cir. 1997), *cert. denied*, 523 U.S. 1075, (1998).[6]

---

[4]In addition, the Court finds that Ryan's treatment of Gray in a belligerent or intimidating manner does not rise to the level of an adverse action.

[5]Again, Gray has failed to show that Dupuis took adverse action against her.

[6]The Sixth Circuit explained that in *Bloch*, the defendant police officer responded to the victim's criticism of his investigation into her rape by revealing to the media extremely intimate and humiliating details about the crime, some of which the victim had not even revealed to her husband.  *Mattox*, 183 F.3d 521.  The court also explained that in *Barrett*, a judge issued press statements that falsely accused a lawyer of stalking her, in retaliation for criticisms the lawyer had made of her.

The Court finds that Gray's humiliation does not rise to the level which is actionable under section 1983.  However, Gray's alleged removal from the Genesis investigation, denial of tuition reimbursement, and the official "Disciplinary Action Notice" are actionable adverse actions.  Due to the controversy surrounding the Genesis investigation, removal from the investigation would chill a person of ordinary firmness from continuing to engage in speaking about the investigation.  Denial of a benefit such as tuition reimbursement, and certainly formal disciplinary action, would also chill a person of ordinary firmness from speaking.

However, Gray has not shown that Gissiner's actions would chill a person of ordinary firmness.  Gray alleges that Defendant Gissiner reassigned Gray's cases for follow-up, altered her investigatory reports, asked that other investigators check her work, and undermined Gray's ability to investigate public officials.  The Court finds that these actions are not adverse actions, but are more in keeping with Gissiner's responsibilities as OMI Manger.  Therefore, Gissiner is entitled to qualified immunity against Gray's claims.

Turning to the final element of the First Amendment analysis, the Court must determine whether Gray has adequately shown that her protected speech was a substantial or a motivating factor in the adverse actions taken by Smith-Johnston.  Gray relies heavily upon the timing of the actions.  However, temporal proximity, alone, is not enough to establish a causal connection in a First Amendment retaliation claim.  *Black v. Columbus Public Schools*, 2005 WL 3440879, *12 (S.D. Ohio 2005); *Taylor v. Keith*, 338 F.3d 639, 646 (6th Cir. 2003) (to survive a motion for summary judgment, an employee must present sufficient evidence linking speech to employer's adverse decision so that a reasonable factfinder could conclude, by a preponderance of the evidence, that the

speech, at least in part, motivated decision to discharge).  The Court finds that the nature of the acts taken by Smith-Johnston show that she was motivated by Gray's protected speech.  Smith-Johnston removed Gray from the Genesis investigation, the very investigation about which she spoke to City Council.  While there is an issue of fact regarding the reason Gray's tuition reimbursement was denied, Smith-Johnston's announcement during an office meeting was unnecessary.  Finally, Smith-Johnston's "Disciplinary Action Notice" makes specific references to communications with City Council as describes them as being insubordination and dishonest.  While there may remain issues of fact as to whether Gray was insubordinate or dishonest, there is an unmistakable link between Gray's communications with City Council and the actions taken against her.

If the plaintiff makes out a *prima facie* case of retaliation, "the burden of persuasion shifts to the defendant who must show by a preponderance of the evidence that there were other reasons for the adverse action and that the same adverse action would have resulted even if the plaintiff had not engaged in the protected activity at issue."  *Leary v. Daeschner*, 349 F.3d 888, 898 (6th Cir. 2003).  Defendants do not argue this defense specifically, but instead Smith-Johnston maintains that Gray was not removed from the Genesis investigation, and was denied tuition reimbursement because there was no money for the program.  These statements create an issue of fact which are not appropriate for resolution upon a summary judgment motion.  *See Rodgers v. Banks*, 344 F.3d 587, 602-603 (6th Cir. 2003) (explaining that burden of proving that employer would have reached the same decision even in the absence of the protected conduct "involves a determination of fact" and ordinarily is "reserved for a jury or the court in its fact-finding role.")

In summary, considering the allegations in a light most favorable to the party injured,

the Court finds that Gray has established a claim of retaliation under the First Amendment based on her communications with City Council and Smith-Johnston's removal of Gray from the Genesis investigation, denial of tuition reimbursement, and issuance of a "Disciplinary Action Notice."

> ### b. Clearly Established Constitutional Right of Which a Reasonable Person Would Have Known

The Individual Defendants do not address this prong of the qualified immunity analysis in their Motion for Partial Summary Judgment.

The test for qualified immunity in a First Amendment retaliation case is: ". . . if an employer in the position of the defendants at the time of the adverse job action, measured objectively, could have disagreed as to (1) whether and to what extent the speech was a matter of public concern, and (2) where the *Pickering* scale, with all of the parties' competing interests in the balance, would ultimately come to rest, then the protection of qualified immunity should be granted." *Akridge v. Wilkinson*, 2006 WL 1112855, *6 (6th Cir. April 26, 2006) (unpublished), *citing Guercio v. Brody*, 911 F.2d 1179, 1184 (6th Cir. 1990); *Moran v. State of Washington*, 147 F.3d 839, 850 (9th Cir.1998). It is not enough that the *Pickering* balancing test was clearly established law at the time of the adverse job action. *Guercio*, 911 F.2d at 1184. The court must determine, in light of the facts of the particular case, whether the plaintiff's "rights under *Pickering*, as opposed to whether the general teachings of *Pickering*, were so clear at the time in question that reasonable minds could not differ on the constitutionality" of the employment action. *Id.*

As discussed above, the Court finds that Gray's speech concerning the interference with the Genesis investigation is a matter of public concern, and the *Pickering* test weighs

in favor Gray.  The Court finds further that under the facts of this case, Gray's rights under *Pickering* were so clear at the time in question that reasonable minds could not differ as to the constitutionality of the actions taken against Gray.  Gray was speaking publicly, to a public body regarding possible interference with a investigation of public officials. Although Defendants raise the issue of insubordination, the Court notes that Gray was in a position where she was forced to choose between obeying City Council's directive to provide information regarding interference with the Genesis investigation directly to council, and Smith-Johnston's prohibition on direct communication with Council.

Based on the foregoing, the Court holds that Defendant Smith-Johnston is not entitled to qualified immunity.

### 3.      Constitutional claims against the City and Defendant Shirey

As stated above, Gray has put forth sufficient evidence of retaliation under the First Amendment.  Therefore, Defendants are not entitled to summary judgment on this claim. However, because Gray has not addressed her due process claim in response to Defendants' Motion for Summary Judgment, Defendants are entitled to summary judgment on this claim.

Defendant Shirey did not move for qualified immunity.  Gray's allegations against Shirey, in connection with her First Amendment claim, warrant some discussion.  Gray alleges that Defendant Shirey did not promote her to the position of permanent OMI Manager in retaliation for speaking to City Council.  Gray also alleges that Shirey failed to create the position of Chief Investigator and promote her to this position.

Defendants argue that Gray's speech cannot serve as a substantial or motivating factor in Shirey's failure to promote Gray to the position of OMI Manager because Shirey

offered Smith-Johnston the OMI Manager position at least two weeks before Gray first appeared before City Council.  The Court notes that there is a dispute as to whether Shirey reconsidered his offer after Smith-Johnston's background check revealed potentially negative information.  *See supra*, note 1.  Given Shirey's role in the Genesis investigation, the Court finds that Gray has presented sufficient evidence linking her communications with Council to Shirey's adverse decision so that a reasonable factfinder could conclude, by a preponderance of the evidence, that the speech, at least in part, motivated Shirey's decision to not promote her to the OMI Manager position permanently, or to not create the position of Chief Investigator.

Finally, Defendants make brief arguments regarding official capacity suits and municipal liability.  The Court acknowledges that official capacity claims "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"  *Kentucky v. Graham*, 473 U.S. 159, 167 (1985), *quoting Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n.55 (1978).  The Court further acknowledges that such a designation is unnecessary.  *See Fluellen v. U.S. Dept. of Justice Drug Enforcement Admin.*, 816 F.Supp. 1206, 1212 (E.D.Mich. 1993) ("Even though it is no longer necessary to bring an official-capacity action against a local government official since under *Monell* the local government unit can be sued directly, many complaints name the entity as a defendant and the official as a defendant in both an individual and official capacity.")  Since the "official capacity" suits against Defendants Smith-Johnston and Shirey are redundant, Defendants are entitled to summary judgment on these claims.

For section 1983 liability to attach to a municipality, a plaintiff must offer proof of a wrongful or injurious policy or custom on the part of the city and a causal link between the

policy or custom and her constitutional deprivation. *City of Canton v. Harris*, 489 U.S. 378, 385-86 (1989). A municipality cannot be sued on a *respondeat superior* basis. *Monell v. Department of Social Servs*., 436 U.S. 658, 691 (1978). However, section 1983 liability may be imposed upon a municipality for a single decision by a policymaker "where the decision maker possesses final authority to establish municipal policy with respect to the action ordered." *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986). Defendants have not argued that Smith-Johnston or Shirey did not possess such final policymaking authority. Therefore, the Court rejects any argument that the City is entitled to municipal liability.

Based on the foregoing, Shirey and the City are not entitled to summary judgment on Gray's First Amendment retaliation claim.

### 4. Discrimination under Title VII and Ohio law

Gray alleges reverse discrimination and retaliation based on race in violation of Title VII and Ohio Rev. Code Chapter 4112 against all Defendants.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

The Sixth Circuit has held that individual employees cannot be held liable under Title VII. *Wathen v. General Electric Co.*, 115 F.3d 400, 405 (6th Cir.1997) (holding "that an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII." ). The Ohio Supreme Court has held that "federal case law interpreting Title VII of the Civil Rights Act of 1964 is generally applicable to cases

involving alleged violations of R.C. Chapter 4112." *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 421 N.E.2d 128, 131 (Ohio 1981). Therefore, Defendants Smith-Johnston, Gissiner, Ryan, Dupuis, and Shirey are entitled to summary judgment on Gray's claims of discrimination and retaliation under Title VII and Ohio Revised Code Chapter 4112.

Because Gray has not presented any direct evidence of discrimination, her claim is properly analyzed under the *McDonnell Douglas* framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1972). In order to establish a *prima facie* case of racial discrimination based upon a failure to promote, the plaintiff must demonstrate that: (1) he or she is a member of a protected class; (2) he or she applied for and was qualified for a promotion, (3) he or she was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions at the time the plaintiff's request for promotion was denied. *Nguyen v. City of Cleveland*, 229 F.3d 559, 562-63 (6th Cir. 2000).

In adapting the *McDonnell Douglas* test to cases of reverse discrimination, the Sixth Circuit has held that, under the first prong, a plaintiff must demonstrate "background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Murray v. Thistledown Racing Club, Inc.*, 770 F.2d 63, 67 (6th Cir. 1985), *quoting Parker v. Baltimore & Ohio R.R. Co.*, 652 F.2d 1012, 1017 (D.C.Cir. 1981); *see also Zambetti v. Cuyahoga Community College*, 314 F.3d 249, 256

(6th Cir. 2002).[7]  To satisfy the fourth prong, a plaintiff must show that the defendant treated differently employees who were similarly situated but were not members of the protected class.  *Sutherland v. Mich. Dept. of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003).

Gray acknowledges this adaptation of *McDonnell Douglas*, and calls to the Court's attention the potential for a heightened standard for reverse discrimination plaintiffs.[8]  However, Gray does not present any evidence that the City is the "unusual employer who discriminates against the majority" other than her unsupported allegations.  On the other hand, the Court rejects Defendants' suggestion that this Court should find, as a matter of law, that the City is not such an employer by citing to this Court's decision in *Vitt v. City of Cincinnati*, 250 F.Supp.2d 885, 891 (S.D.Ohio 2002).

Because Gray is unable to establish a *prima facie* case of reverse discrimination, Defendants are entitled to summary judgment on Gray's claims under Title VII and Ohio law.

### 5.    Retaliation under Title VII and Ohio law

Gray argues that her retaliation claim is based upon her complaints to the City's EEO officer and Shirey that she felt that she was not being considered for the position of OMI Manager because she is white.  However, Gray has not cited to evidence in the record of these statements by Gray.  Therefore, Defendants are entitled to summary judgment on

---

[7]To satisfy the burden of demonstrating background circumstances that give rise to a suspicion of discrimination against the majority in employment, the plaintiff may present evidence of the defendants' unlawful discrimination in employment decisions in the past.  *Sutherland v. Michigan Dept. of Treasury*, 344 F.3d 603, 615 (6th Cir. 2003), *citing*, *Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 256 (6th Cir. 2002).

[8]The Court notes that the Sixth Circuit has questioned whether the "background circumstances" prong, only required of "reverse discrimination" plaintiffs, may impermissibly impose a heightened pleading standard on majority victims of discrimination.  *Zambetti v. Cuyahoga Community College*, 314 F.3d 249, 257 (6th Cir. 2002).

Gray's claim of retaliation under Title VII and Ohio law.

### 6.   Ohio Public Records Act and Ohio public policy

Gray's Ohio Public Records Act claim is based upon an August 22, 2001 request for public records.  (Doc. 64, ¶ 70)  Gray avers that the request was only partially fulfilled.  (Id.)  Gray maintains that Defendants' conduct was meant to hinder her ability to pursue her legal claims.  (Id. ¶ 97)  Defendants argue that Gray's only available remedy for any violation is to file a petition for a writ of mandamus.  Gray makes no response to this argument.  The Court finds that Defendants are correct.  As this Court has previously recognized: "Mandamus will lie and is indeed the appropriate remedy to compel a public office to disclose records." *Smith v. City of Dayton, Ohio*, 68 F.Supp.2d 911, 916 (S.D.Ohio 1999), *citing State ex rel Steckman v. Jackson*, 639 N.E.2d 83 (Ohio 1994).  Accordingly, Defendants are entitled to summary judgment on Gray's claim under Ohio Public Records Act and violation of Ohio public policy.

### 7.   Destruction of public records

Gray alleges that Defendants destroyed public records in violation of Ohio Rev. Code § 149.351.  (Doc. 64, ¶¶ 99-101)  This claim is not the subject of Defendants' Motion for Summary Judgment.

### 8.   Spoilation of evidence

This claim was added in Gray's Amended Complaint, and is not the subject of Defendants' Motion for Summary Judgment.

## C.   CONCLUSION

In summary, Gray's section 1983 claim (Count I) remains pending against Defendants the City, Smith-Johnston, and Shirey.  Gray's claims for destruction of public

records (Count V) and spoilation of evidence (Count VI) remain pending against all Defendants.  Accordingly, it is hereby ordered that:

1.  Defendants Glenda Smith-Johnston, Mark Gissiner, Kent Ryan, and Fay Dupuis' Motion for Partial Summary Judgment (Doc. 15) is **GRANTED in PART and DENIED in PART:**

    a.  Defendants' Motion is granted as to Defendants Gissiner, Ryan and Dupuis; and

    b.  Defendants' Motion is denied as to Defendant Smith-Johnston; and

2.  Defendants Motion for Summary Judgment (Doc. 24) is hereby **GRANTED in PART and DENIED in PART:**

    a.  Defendants' Motion is granted as to Plaintiff's claim of violation of Due Process;

    b.  Defendants' Motion is denied as to Plaintiff's First Amendment retaliation claim;

    c   Defendants' Motion is granted as to Plaintiff's First Amendment claim against Defendants Smith-Johnston and Shirey in their official capacity;

    d.  Defendants' Motion is granted as to Plaintiff's claims of discrimination and retaliation under Title VII and Ohio Revised Code Chapter 4112;

    e.  Defendants' Motion is granted as to Plaintiff's claims of violations of Ohio Public Records Act and Ohio public policy.

**IT IS SO ORDERED.**

_____/s/ Michael R. Barrett_____
Michael R. Barrett, Judge
United States District Court